UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HAREMZA,

    Petitioner,

v.

HUGH WOLFENBARGER,

    Respondent.
_____/

Case No. 2:08-CV-14099

HON. AVERN COHN

**<u>MEMORANDUM AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

**I. <u>Introduction</u>**

This is a habeas case under 28 U.S.C. § 2254. Petitioner Timothy Haremza is a state inmate confined at the Bellamy Creek Correctional Facility. Petitioner is imprisoned by virtue of a string of three consecutive sentences: (1) a September 11, 1980, 15-to-30 year sentence for his guilty plea conviction for armed robbery, MICH. COMP. LAWS 750.529; (2) a July 7, 1994, 10-to-30 year sentence for another guilty plea conviction for armed robbery; and (3) July 11, 2005, concurrent 12-to-30 year sentences for his no contest plea convictions for carjacking, MICH. COMP. LAWS 750.529A, and kidnaping, MICH. COMP. LAWS 750.349, and concurrent terms of 1-to-4 years for his no contest plea convictions for two counts of illegal use of a financial transaction device. MICH. COMP. LAWS 750.157Q. Petitioner has filed a <u>pro se</u> petition for writ of habeas corpus challenging the last set of convictions. Respondent, through the Michigan Attorney General's Office, filed a response, arguing that Petitioner's claims are not cognizable or

without merit.  For the reasons which follow, the petition will be denied.

## II. Background

Dating back to 1976, Petitioner pled guilty to armed robbery in Washtenaw Circuit Court on three separate occasions, and as a result he has spent the majority of his adult life in prison.  The instant case arises out of an incident occurring while Petitioner was serving a term of parole from his third armed robbery conviction.

Arielle Goldman testified at the preliminary examination that she had met Petitioner at the Jewel Heart Buddhist Center in Ann Arbor, and had known him for over one-year.  On the afternoon of August 5, 2004, Petitioner knocked on Goldman's door.  Goldman was on edge because she knew that drugs had been found in Petitioner's apartment.  She talked with Petitioner for a short time through her half-opened door when Petitioner asked if he could come inside for a glass of water.

Goldman showed Petitioner to her kitchen table.  The two sat and talked for about half an hour.  Petitioner told Goldman that he was feeling depressed and suicidal, and Goldman suggested that he seek counseling.  Petitioner then told Goldman that he had killed someone in Ypsilanti that morning, and he showed her what appeared to be a blood stain on his arm.

Goldman told Petitioner that whatever happened, she would be there for him.  Petitioner responded that she did not understand and he proceeded to pull a cord from a cell phone charger out of the wall.  Petitioner pulled the cord taut as he came towards Goldman.

Goldman screamed for Petitioner not to hurt her and balled herself up in her chair.  Petitioner said he would not harm her, but he tied her wrists together with the cord.

Petitioner then told Goldman to walk to her bedroom and lie down in her bed. He cut down another cord from the window blinds and tied her ankles with it. Petitioner wrapped clothing around Goldman's face and neck and taped her lips.

Petitioner asked her where her car keys and wallet were located, and he told Goldman that if she tried to get out or scream he would hurt her friends. Petitioner removed cash and the ATM card from her wallet.

Petitioner told Goldman that he needed a head-start, and he would call a friend in an hour to come and untie her. Goldman waited for a time, guessed that Petitioner had probably not sent help, and then managed to free herself sufficiently to get to her neighbor's door. From there the police were called. Besides stealing cash and the ATM card, Petitioner drove away in Goldman's car.

Following the preliminary examination, Petitioner was bound-over for trial on seven counts: (1) kidnaping, (2) carjacking, (3) illegal use of a financial transaction device, (5) larceny from a building, (6) armed robbery, (7) unlawful driving away an automobile, and (8) assault and battery. The prosecutor agreed not to seek bind-over on count (4), which had charged Petitioner with an additional count of illegal possession of a financial transaction device, because the evidence only showed that one card was taken from the victim.

On June 13, 2005, Petitioner reached a plea bargain with the prosecutor. Defense counsel indicated that there were now seven counts after count four was dismissed after the preliminary examination. Counsel stated that Petitioner would plead no contest to counts one through four, even though count four had been previously dismissed. In exchange, the prosecutor agreed to dismiss counts five through eight, and he would

dismiss the habitual-offender charge.  Furthermore, the parties reached a sentencing agreement whereby Petitioner would be sentenced to 12-to-30 years for counts one and two, and 1-to-4 years for counts three and four.  The four sentences would run concurrently with each other but consecutively to the sentences Petitioner was out on parole for when he committed the instant offenses.

      Defense counsel stated:

> Mr. Harmeza and I have discussed this many times, discussed other issues of the case, on being whether or not to pursue an insanity defense.  He does not wish to do that and he wishes to accept this offer at this time.

Plea Hrg. at 4.

      Petitioner was placed under oath.  He indicated that he had heard the agreement placed on the record.  He acknowledged that he understood the terms of the agreement and wanted the court to accept it.  The Court informed Petitioner of the rights he would be waiving by entering the no contest plea, and Petitioner indicated his understanding and desire to waive those rights.  Petitioner denied that any promises, threats or inducements other than those placed on the record were made to him in order to get him to plead no contest.  The trial court accepted the plea.

      Petitioner was sentenced on July 11, 2005.  Defense counsel sought and received several corrections to the pre-sentence information report.  The prosecutor successfully argued for an adjustment of a sentencing guideline variable because the victim received treatment as the result of the crime.  Defense counsel, acknowledging that there was a sentencing agreement, objected to the scoring of a few other offense variables.  The Court thereafter sentenced Petitioner under the terms of the sentencing agreement.

      Petitioner then filed an application for leave to appeal in the Michigan Court of

Appeals.  His pro se application raised three claims:

> I.  Mr. Haremza should be allowed to withdraw his plea where numerous errors rendered his plea involuntary, illusory, and not understandingly made and where he received ineffective assistance of counsel for his trial attorney's failure to object to these errors.
>
> II.  Mr. Haremza should be resentenced where: (1) it is unknown whether he received jail credit for this case towards the underlying offense, and if not, he should be credited in this case; (2) his guidelines were incorrectly scored; (3) he was sentenced based upon inaccurate and irrelevant information; and where (4) he received ineffective assistance of counsel for his attorney's failure to object to these pivotal errors.
>
> III.  Mr. Haremza received ineffective assistance of counsel for, inter alia, trial counsel failing to object to the numerous plea and sentence errors as cited in this brief.

The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  *People v. Haremza,* No. 274479 (Mich.Ct.App. February 26, 2007). Petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims.  The Michigan Supreme Court denied leave to appeal. *People v. Haremza,* 480 Mich. 866 (2007).

Petitioner has now filed a petition for writ of habeas corpus, raising the following claims:

> I.  Petitioner's plea to illegal sale or use of a financial transaction device (two counts) was invalid where the circuit court did not have jurisdiction to sentence Petitioner on a second count under Michigan Compiled Laws 750.157q.
>
> II.  Resentencing of Petitioner is required where: (1) his plea and sentence were based on incorrectly scored guidelines; (2) the court relied upon inaccurate and irrelevant information; (3) the Petitioner was sentenced for a crime he was never charged with, and (4) Petitioner was ineffectively assisted by counsel.
>
> III.  Petitioner received ineffective assistance of counsel for, inter alia, failing to object to plea and sentencing errors.

### III.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts."  *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### IV. Analysis

#### A. Claim I - Challenges to Count Four

In his first ground for habeas relief, Petitioner challenges the validity of his conviction on count four, the second count of illegal use of a financial transaction device. Petitioner argues that because he was not bound-over on that charge, the state trial court had no jurisdiction to accept his no contest plea to that count. He also asserts that his attorney provided constitutionally ineffective assistance of counsel by allowing him to plead guilty to that charge. Respondent argues that the Court should ignore the claim because even if it had merit, invalidating one 1-to-4 year sentence would not effect the length or fact of Petitioner's confinement. That is, Respondent contends that because Petitioner's sentence on this count is being served concurrently with another 1-to-4 year sentence and concurrently with two 12-to-30 year sentences, no meaningful relief can be granted with respect to this claim.

Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989); *see also, United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992). The doctrine is a discretionary one, *see Hughes*, 964 F.2d at 541, and courts "are admittedly hesitant to apply this doctrine." *Dale*, 878 F.2d at 935 n.3; *see also, Winn v. Renico*, 175 Fed. Appx. 728, 732 (6th Cir. 2006). The doctrine is applicable only "when there is no possibility of adverse 'collateral consequences' if the convictions stand." *Winn*, 175 Fed. Appx. at 732 (emphasis added); *see also, Dale*, 878 F.2d at 935 n.3; *Wilson v. Straub*, 185 F. Supp. 2d 766, 769 (E.D. Mich. 2002). The Court

should presume that petitioner's conviction carries adverse collateral consequences, *see Wilson*, 185 F. Supp. 2d at 769-70 (*citing Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968)).

Here, if Petitioner's other three convictions are valid, there is no possibility of adverse collateral consequences if his conviction for count four is allowed to stand. The challenged sentence is identical in length to count three, and Petitioner does not dispute that the trial court had jurisdiction with respect to that charge. Moreover, Petitioner will not be eligible for parole on his two 12-to-30 year sentences until long after he has served the maximum four year term on the sentence challenged by this claim. Nor does Petitioner allege any other collateral consequences that would result. Accordingly, under the concurrent sentencing doctrine, the Court need not reach the merits of Petitioner's first claim.

However, even if review of the claim was not barred under the collateral sentencing doctrine, it would fail on the merits. Under Michigan law, if a criminal defendant "fail[s] to object to the absence of an arraignment [he has] waived the arraignment issue." *People v. Andrews*, 157 Mich. App. 559, 561; 403 N.W.2d 186 (1987). Here, at the guilty plea hearing, Petitioner was made aware that the plea bargain called for him to plead no contest to the second count of illegal possession of a financial transaction device. In describing the agreement his counsel stated "[it] was dismissed at the preliminary examination, but he's going to enter a no contest plea to Count 4." Plea Tr. at 3. The trial court then specifically asked Petitioner if he understood that he was pleading no contest to two counts for that offense, and Petitioner acknowledged that he did. An amended Infomation was filed after the guilty plea hearing reflecting the corrected

8

charges. Under these circumstances, Petitioner waived any objection to defects in the charging documents.

Overall, Petitioner is not entitled to habeas relief on his first claim.

### B. Claim II - Sentencing Challenges

In his second ground for relief, Petitioner challenges the validity of all of his sentences on several grounds. He asserts that the sentencing guidelines were incorrectly scored, the trial court relied upon inaccurate information in imposing sentence, and he was sentenced for a crime he was not charged with. Respondent asserts that the claims lack merit.

Petitioner's claims ignore the fact that he agreed to a particular sentence as part of his plea agreement. Therefore, any scoring of the guidelines was irrelevant to Petitioner's actual sentence and any inaccurate information in the presentence report did not form a basis for an increase in his sentence. That is, Petitioner's sentence arose from the plea agreement, and not from any determinations regarding sentencing factors. *Cf. United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (alleged *Booker* error in court scoring sentencing guidelines was irrelevant where defendant agreed to specific sentence, and thus his sentence arose from the plea itself and not the guidelines); *Dorie v. Phillips*, No. 1:07-cv-1195, 2010 U.S. Dist. LEXIS 30477, 2010 WL 1258234, at *7 (W.D. Mich. Mar. 8, 2010) (where petitioner agreed to applicable guideline range as part of plea agreement, counsel was not ineffective in failing to object to scoring of the guidelines), magistrate's report adopted, 2010 U.S. Dist. LEXIS 30454, 2010 WL 1258233 (W.D. Mich. Mar. 30, 2010). A criminal defendant who consents to a specific sentence in a plea agreement and receives the exact sentence that he bargained for waives the right

to challenge the sentence on appeal or collateral review. *See United States v. Livingston*, 1 F. 3d 723, 725 (8th Cir. 1993)(internal citations omitted). Here, Because Petitioner received the exact sentence that he bargained for in this case, he was not prejudiced by any inaccuracy in the scoring of the guidelines or misinformation contained in the pre-sentencing information report. As such, Petitioner is not entitled to habeas relief on this claim.

### C. Claim III - Ineffective Assistance of Counsel

Petitioner's final claim asserts that he was denied the effective assistance of counsel. The claim is not well developed, but the Court understands Petitioner to be arguing that, but for counsel's failures to accurately compute the sentencing guidelines before the plea and to challenge the reinstatement of count four, he would have somehow received a more favorable sentencing agreement or would not have pled no contest.

Petitioner has failed to demonstrate that his counsel was ineffective. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* Even if a court determines that counsel's performance was outside that range, the defendant is

not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Here, Petitioner cannot meet either prong of the inquiry. First, Petitioner cannot overcome the presumption that counsel rendered reasonable assistance. Petitioner committed the instant offense while he was on parole from his third armed robbery conviction. As a fourth-time habitual offender he faced the prospect of serving a life sentence. The plea agreement provided that Petitioner would receive a guaranteed minimum sentence of twelve years. The evidence produced at the preliminary examination demonstrated that the victim knew Petitioner, and even now Petitioner does not indicate what defense he had to the charges. Nor has Petitioner demonstrated that his counsel would have been able to negotiate a more favorable deal. Under these circumstances, counsel's advice to accept the favorable agreement that he negotiated was entirely reasonable and strategic.

Moreover, Petitioner cannot demonstrate the requisite prejudice required by the second prong of *Strickland* and *Hill*. An assessment of whether a defendant would have

gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.  The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty or no contest. *See Maples v. Stegall*, 340 F. 3d 433, 440 (6th Cir. 2003).  The petitioner must therefore show a reasonable probability that but for counsel's errors, he would not have pleaded guilty or no contest, because there would have been a reasonable chance that he would have been acquitted had he insisted on going to trial. *Doyle v. Scutt*, 347 F. Supp. 2d 474, 484 (E.D. Mich. 2004).  A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005).

     Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pressing for a different scoring of the sentencing guidelines.  Petitioner does not indicate what defenses, if any, that he had to these charges, and there is no indication that the prosecutor would have agreed to a more favorable plea bargain.  Moreover, as detailed above, the evidence against Petitioner on the charged crimes was overwhelming.  Petitioner has therefore failed to show that counsel was ineffective in advising him to accept the sentencing agreement.

## V. Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on any of

his claims. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[1] *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner is also **DENIED** *in forma pauperis* status to appeal because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**SO ORDERED**.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated: March 14, 2011

I hereby certify that a copy of the foregoing document was mailed to Timothy Haremza 144492, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846 and the attorneys of record on this date, March 14, 2011, by electronic and/or ordinary mail.

      S/Julie Owens
      Case Manager, (313) 234-5160

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.